**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:<br>18-cv-07824; 18-cv-07827; 18-cv-07828; 18-cv-07829; 19-cv-01781; 19-cv-01783; 19-cv-01785; 19-cv-01788; 19-cv-01791; 19-cv-01792; 19-cv-01794; 19-cv-01798; 19-cv-01800; 19-cv-01801; 19-cv-01803; 19-cv-01806; 19-cv-01808; 19-cv-01809; 19-cv-01810; 19-cv-01812; 19-cv-01813; 19-cv-01815; 19-cv-01818; 19-cv-01866; 19-cv-01867; 19-cv-01868; 19-cv-01869; 19-cv-01870; 19-cv-01871; 19-cv-01873; 19-cv-01894; 19-cv-01896; 19-cv-01918; 19-cv-01922; 19-cv-01926; 19-cv-01928; 19-cv-01929; 19-cv-01931; 19-cv-10713; 21-cv-05339. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**DEFENDANTS' OPPOSITION TO SKAT'S MOTION IN LIMINE TO PRECLUDE THE IRS EXAMINATION OF THE RJM CAPITAL PENSION PLAN**

## TABLE OF CONTENTS

**Page**

I. FACTS ...........................................................................................................................1

    A. The RJM Capital LLC Pension Plan........................................................................1

    B. The IRS Exam ........................................................................................................2

    C. The IRS Exam Is Directly Relevant........................................................................5

    D. The IRS Audit Is Not *Unfairly* Prejudicial ............................................................8

II. CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Accely v. Consol. Edison Co. of New York, Inc.*, No. 19 CIV. 5984 (DC), 2023 WL 3045795 (S.D.N.Y. Apr. 20, 2023) ............................................................................9

*Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991) ...............................................9

*In re MetLife Demutualization Litig.*, 262 F.R.D. 217 (E.D.N.Y. 2009) .........................9

### STATUTES, RULES, AND REGULATIONS

I.R.C. § 401(a) .....................................................................................................1, 2, 4, 5

Fed. R. Evid. 104(a) ...........................................................................................................7

Fed. R. Evid. 403 ...............................................................................................................9

Fed. R. Evid. 803(8) ..........................................................................................................9

### OTHER AUTHORITIES

31 Michael H. Graham, Federal Practice and Procedure § 6759 (Interim ed.1992) .........9

SKAT contends that the pension plan defendants in these cases were not "qualified" under "section 401(a) of the Internal Revenue Code." No less an authority than the IRS reached a different conclusion. It conducted a two-year review of documents relating to fifteen of the defendant Plans, and took no issue with their qualified status. SKAT seeks to preclude any evidence of the IRS's review. The evidence SKAT wishes to preclude is directly relevant and it is neither confusing nor unfairly prejudicial.

The motion should be denied.

## I.   FACTS

### A.   The RJM Capital LLC Pension Plan

One-participant pension plans are relatively common, and they can be tax qualified under the Internal Revenue Code. As the IRS's website explains: "The one-participant 401(k) plan isn't a new type of 401(k) plan. It's a traditional 401(k) plan covering a business owner with no employees, or that person and his or her spouse. These plans have the same rules and requirements as any other 401(k) plan."[1]

In 2005, following a successful career at Goldman Sachs & Co. and the CIT Group, Richard Markowitz became self-employed, and provided strategic and financial advice to corporate and banking clients. Decl. of Marc Weinstein dated Aug. 15, 2024 ("Weinstein Decl.") Ex. 3, ECF No. 1137-3. He conducted some of this work through single member LLCs, including RJM Capital LLC. *Id.* In 2008 and 2009, RJM Capital LLC provided M&A advisory and financing services in connection with the sale of businesses owned by AXA Group S.A., BNP Paribas S.A., and Zurich Insurance Group. *Id.* These revenue-generating activities were the source of initial contributions to the RJM Capital LLC Pension Plan ("the RJM Plan"). *Id.* Relevant to this case,

---

[1]   *One-participant 401(k) plans*, https://www.irs.gov/retirement-plans/one-participant-401k-plans (last visited Aug. 22, 2024).

1

beginning in 2012, the RJM Plan opened accounts at Solo Capital Partners LLP ("Solo Capital") to pursue the trading strategy at issue in this case. In the course of executing that strategy, refund reclaims were submitted to SKAT that included a copy of Form 6166, in which the United States Treasury Department certified that it considered the RJM Plan a qualified pension plan under section 401(a) of the Internal Revenue Code. *See* Decl. of Andrew S. Dulberg dated Sep. 3, 2024 ("Dulberg Decl.") Ex. 1 (IRS Form 6166).[2]

### B. The IRS Exam

On February 28, 2019, SKAT filed suit against the RJM Plan and Richard Markowitz. Compl., *Skatteforvaltningen v. RJM Capital Pension Plan*, 19-cv-01898 (S.D.N.Y. Feb. 28, 2019), ECF No. 1. Among other things, the Complaint alleged that the defendants falsely represented that the RJM Plan was tax qualified under section 401(a) of the Internal Revenue Code. *Id.* ¶¶ 28, 55, 61, 63, 82. By that time, the IRS was already looking into that very question.[3]

The IRS examination of the RJM Capital Pension Plan began in March 2018. Weinstein Decl. Ex. 2 at 3 of 19, ECF No. 1137-2. Contrary to SKAT's recitation, the scope of the IRS's inquiry was neither limited to a single pension plan, nor a single form, nor a single year. The IRS requested—and the RJM Plan provided—information regarding the Avanix Management LLC Roth 401(k) Plan, Batavia Capital Pension Plan, Battu Holdings LLC Roth 401(k) Plan, Calypso Investments LLC Pension Plan, Cavus Systems LLC Roth 401(k) Plan, Crucible Ventures LLC Roth 401(k) Plan, Hadron Industries LLC Roth 401(k) Plan, Limelight Global Productions LLC

---

[2] A Form 6166 can be requested from the IRS for the purposes of claiming benefits under an income treaty or VAT exemption by submitting a Form 8802 to the IRS (Application for United States Residency Certification). *Form 8802, Application for United States Residency Certification - Additional certification requests*, https://www.irs.gov/individuals/international-taxpayers/form-8802-application-for-united-states-residency-certification-additional-certification-requests (last visited Aug. 31, 2024). *See also Instructions for Form 8802*, https://www.irs.gov/pub/irs-prior/i8802--2012.pdf, at 2 (Oct. 11, 2012).

[3] The IRS's initial letter to the RJM Capital Plan explained: "We randomly select most returns from all Form 5500 returns filed for qualified plans, or as part of a special project. We want to ensure compliance with the laws and regulations governing retirement plans." Dulberg Decl. Ex. 2 (Mar. 28, 2018 Letter from IRS).

Roth 401(k) Plan, Michelle Investments LLC Pension Plan, Monomer Industries LLC Roth 401(k) Plan, Plumrose Industries LLC Roth 401(k) Plan, Remece Investments LLC Pension Plan, Routt Capital LLC Solo 401(k) Plan, f/k/a Routt Capital Pension Plan and Trust, True Wind Investments LLC Roth 401(k) Plan, and Xiphias LLC Pension Plan, each of which is a defendant in this action.[4]

At the request of the IRS, the RJM Plan provided "all monthly bank and broker statements for 2012, 2013, 2014, 2015, and 2016," including statements issued by Solo Capital. Weinstein Decl. Ex. 7 at 2 of 18. These statements included extensive details of the RJM Plan's trading activity, including its purchases of Danish securities, the receipt of funds from payment agents following the trading in Danish securities, the fees it paid to Ganymede, and distributions the RJM Plan received from other plans pursuant to partnership agreements. *Id.* The Solo Capital account statements that the RJM Plan provided to the IRS include detailed lists of the Danish securities in which the RJM Plan traded, the dates on which the trades occurred, and the volume and price of the securities traded.[5] And the monthly bank statements the RJM Plan provided reflect deposits received from Goal Taxback Limited—which the RJM Plan explained in correspondence to the IRS represented "direct payment of proceeds from withholding tax refund claims to the RJM Plan."[6]

SKAT's suggestion that the IRS – in closing its review and requiring no changes to the RJM Plan's returns – did not consider whether the RJM Plan was properly qualified is wishful thinking without any factual basis. In fact, as the IRS's own manual makes clear, the whole

---

[4] Weinstein Decl. Ex. 4, ECF No. 1137-4; Weinstein Decl. Ex. 5, ECF No. 1137-5; Weinstein Decl. Ex. 7, ECF No. 1137-7; *see also, e.g.*, Weinstein Decl. Ex. 6, ECF No. 1137-6, at 9-10 of 10 (inquiring about Avanix, Batavia, Calypso, Cavus, Hadron, and Routt).

[5] *See, e.g.*, Dulberg Decl. Ex. 4 (Solo Capital Partners LLP account statement for RJM Capital Pension Plan dated Mar. 31, 2013); Dulberg Decl. Ex. 5 (Solo Capital Partners LLP account statement for RJM Capital Pension Plan dated Apr. 30, 2013); Dulberg Decl. Ex. 6 (Solo Capital Partners LLP account statement for RJM Capital Pension Plan dated Mar. 16, 2015).

[6] *See, e.g.*, Weinstein Decl. Ex. 7, ECF No. 1137-7, at 3 of 18.

purpose of such exams is to determine the plan's compliance with the plan qualification requirements in Section 401(a) of the Code. The Internal Revenue Manual provided an "Overview of Form 5500 Examination Procedures," which covered Form 5500-EZ examinations like the one at issue here.[7] The Manual explained:

> (1) EP Examinations **determine if a retirement plan is qualified under IRC 401 and the underlying regulations, and therefore, exempt from tax under IRC 501**.
>
> (2) Policy Statement 4-119 provides that the primary objective of the Employee Plans examination program is regulatory, with emphasis on continued qualification of employee benefit plans. **IRS selects and examines returns to:**
>
>> a. Promote the highest degree of voluntary **compliance with the tax laws governing plan qualification**.
>>
>> b. Determine the extent of compliance and the causes of noncompliance with the tax laws by qualified plans.
>>
>> c. **Determine whether such plans meet the applicable qualification requirements in operation.**

IRM Section 4.71.1.1.1 (version updated Nov. 29, 2019) (emphasis added).

This particular IRS examination lasted nearly two years. On February 3, 2020, the IRS's Director of Employee Plan Examinations wrote to the Plan: "Our recent examination of your return(s) for the above year(s) shows no change is necessary in the information reported. We are pleased to inform you that we have accepted the return(s) as filed."[8] The examination had concluded, and the Plan remained tax qualified.

---

[7] Form 5500-EZ is the IRS form required to be filed by one-participant pension plans. *See* About Form 5500-EZ, Annual Return of A One-Participant (Owners/Partners and Their Spouses) Retirement Plan or A Foreign Plan, https://www.irs.gov/forms-pubs/about-form-5500-ez (last visited Sep. 3, 2024).

[8] Weinstein Decl. Ex. 10, ECF No. 1137-10.

- 4 -

### C. The IRS Exam Is Directly Relevant

The facts relating to the IRS examination of the RJM Plan are directly relevant to SKAT's claims. SKAT continues to assert that the Plans "did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code." SKAT Mem. at 2 (quoting Amended Complaint). By putting directly at issue the Plans' compliance with the Internal Revenue Code, SKAT necessarily opens the door to the argument that the Internal Revenue Service analyzed the Plans' compliance with that Code and determined that the RJM Plan complied. In short, the IRS examination squarely responds to SKAT's claim.

To be clear, SKAT's invitation that the jury find a pension plan not qualified under section 401(a) of the Internal Revenue Code lacks any precedent and should be rejected. The IRS has primary regulatory and enforcement authority with respect to the qualification requirements for pension plans.[9] In other words, whether or not a pension plan is qualified is a question that the IRS routinely resolves. And in this case—both **before** the Plan began participating in the transactions at issue in this case **and after**—the IRS has made that exact determination.

As a factual matter, with every reclaim request, the RJM Plan provided SKAT with IRS Form 6166, in which the IRS stated that "to the best of our knowledge," the Plan was tax qualified under section 401(a) of the Internal Revenue Code.[10] The Form 6166 demonstrates the truth of the Plan's representations. SKAT's theory of falsity presumably is that the Defendants lied to SKAT when they presented SKAT with the IRS's Form 6166 because they knew or should have known that *if* the IRS had all relevant facts about the pension plans, it would not have issued the

---

[9] *See, e.g.*, *401(k) resource guide - Plan sponsors - What if you are audited?*, https://www.irs.gov/retirement-plans/plan-sponsor/401k-resource-guide-plan-sponsors-what-if-you-are-audited (last visited Aug. 23, 2024) ("The IRS has primary jurisdiction over the qualified status of 401(k) plans, which includes examining plans and processing requests for determination letters.").

[10] *See, e.g.*, Dulberg Decl. Ex. 6 (Danish Tax Refund Application for Michelle Investments Plan). Each of the pension plan defendants in this case submitted similar Forms 6166 along with each reclaim application submitted to SKAT.

Form.  When SKAT's claim is understood that way, the relevance of the fact that the IRS ultimately reviewed the RJM Plan with knowledge of all the Danish transactions and declined to disrupt its tax-qualified status is striking.

The jury ought to understand that SKAT's argument that the Plan was not qualified flies in the face of the IRS's post-audit no change letter.  If the Plan were not tax qualified, the IRS would not have approved its filing of Form 5500-EZ, as evidenced by the then-operative version of the IRS Instruction for Form 5500-EZ.  And the particular Form 5500-EZ that the IRS was reviewing specifically represented that the Plan was tax qualified.  Dulberg Decl. Ex. 7 (RJM Capital Pension Plan IRS Form 5500-EZ for 2016).  On page 2, part IV, question 9, the form requires entering the two-character feature code from the List of Plan Characteristics in the instructions.  The RJM Plan's form lists 2J, identifying the Plan as "a cash or deferred arrangement . . . that is part of a qualified defined contribution plan … ."[11]  In other words, by approving the return as filed, the IRS was approving the description of the plan as a "qualified defined contribution plan."  And SKAT's suggestion that the IRS somehow did not know about the issues SKAT raises as purported bases for the Plans' disqualification is simply wrong.  The IRS was fully aware of the Plans' trades in Danish securities, and fully aware of the Plans' payment to Solo of fees representing more than 65% of the reclaims.[12]  Indeed, the partnership distributions were filed with the IRS on a timely

---

[11]     *Instructions for Form 5500-EZ*, https://www.irs.gov/pub/irs-prior/i5500ez--2016.pdf, at 3 (Nov. 1, 2016).
[12]     *See, e.g.*, Dulberg Decl. Ex. 7.  As C. Frederick Reish, who the Defendants previously proposed as an expert in this litigation, explained in his February 28, 2022 Reply Expert Report, the information that the RJM Plan provided to the IRS:

> would have been more than adequate to apprise even a neophyte IRS agent of fundamental qualification defects (if they were defects, which they were not) of the type alleged by Ms. Wagner relating to plan formation and investments in Solo Capital, including 'permanency' (effective date and timing of contribution stoppage), the exclusive benefit rule (compensation to third parties and payments to partners), and purportedly 'improper sources of funding' (sources of transfers, contributions, etc. and business activities), and so on.

basis via Schedule K-1 filings (Form 1065) and subsequently provided to the IRS as a part of the Plans' review.

The IRS's determination is directly relevant not only to whether the RJM Plan made a material misstatement regarding whether it was a US qualified pension plan—it did not—but it also bears on the jury's assessment of the Defendants' state of mind. SKAT has accused the Plan and its sponsor, Richard Markowitz, of making that purportedly false representation knowingly or recklessly (in its counts of fraud and aiding and abetting) and negligently (in its count for negligent misrepresentation). The fact that the IRS did not disqualify the RJM Plan following its examination is powerful evidence of the Plan's qualified status, and strongly undermines evidence of even negligence. In other words, if the IRS did not disqualify the RJM Plan, that supports the conclusion that the Defendants did not fail to use reasonable care to ensure that their representations were correct.

Evidence of the IRS examination also bears on SKAT's numerous equitable claims. According to SKAT, the Defendants made just two discrete misrepresentations. One of the two representations related to whether pension plans had been approved by the IRS. The fact that the Plan remained qualified following an IRS examination tips the scales towards the Plan. In weighing the equitable claims where the jury's broad mandate is to do justice, considering evidence of the IRS examination is entirely appropriate.[13]

---

ECF No. 808-21 (Reish Reply Expert Report) at ¶ 76. On SKAT's motion, the Court excluded Mr. Reish's testimony on other grounds. But common sense supports Mr. Reish's point, and the Court need not ignore it in assessing SKAT's motion. See Fed. R. Evid. 104(a). And SKAT's argument that the audit, on its face, only concerned a single form in a single year misses the mark. If the IRS were only concerned with confirming, as SKAT says, "its assets at the beginning and end of the year, and that the plan received no contributions, made no participant loans, and was not subject to certain funding requirements" (SKAT Mem. at 4-5), it would not have taken two years to conduct the audit. This is not speculation—the scope of the examination undeniably extended well beyond the facts sufficient to corroborate the numbers reported in the RJM Plan's 2016 Form 5500-EZ.

[13]   To be clear, the question of plan qualification is only relevant to the amount of the refund the Plans were entitled to recover, and has no bearing on whether the Plans were entitled to a refund in the first place. This is because

### D. The IRS Audit Is Not *Unfairly* Prejudicial

The Court should reject SKAT's argument that consideration of the IRS examination would be ***unfairly*** prejudicial. In fact, the exclusion of the evidence of the examination would be unfairly prejudicial to the Defendants—SKAT ought not be permitted to insist that the RJM Plan was not actually tax qualified while depriving Defendants of the ability to explain that the IRS thoroughly examined the RJM Plan following the events at issue in this case and declined to disqualify it.

SKAT's arguments all miss the mark. First, SKAT observes that the jury will determine whether the RJM Plan "remained tax-qualified during the relevant period." SKAT Mem. at 5. In fact, the jury will determine the different question of whether the Plan made a false statement. The issue in this motion is about what evidence the jury may consider in evaluating the veracity of the Defendants' statements, and there is nothing unfair about learning that the IRS examined the RJM Plan, examined key facts that SKAT insists should be disqualifying, and declined to impose any change to the Plan's status or tax reporting.

SKAT's objection that the IRS's "no change" letter lacks "detail" (SKAT Mem. at 5) provides no basis to exclude it. The letter's plain language establishes that the IRS permitted the RJM Plan to file as a tax-exempt entity. SKAT is free to subject any witnesses who testify regarding the no-change letter to the "crucible of cross-examination," and can in that context underscore the brevity of the letter. But the fact that the IRS letter is concise does not change its meaning and provides no reason to exclude it, and certainly does not support the argument that the

---

foreign holders of Danish dividends are taxed at a lower rate than the 27% withholding rate, regardless of whether they are tax-exempt entities. *See* Denmark-U.S. Double Taxation Treaty Art. 10, § 2(b) (explaining that Danish dividend tax to U.S. beneficial owner cannot exceed 15%). Thus, SKAT cannot prevail in this case by proving *only* that the representation as to Plan qualification status was untrue, because that would reduce to the argument that Defendants were entitled to refunds but not to the full extent SKAT paid them. That would establish only a tax dispute, not the theft SKAT's claims depend upon.

letter is "misleading" and "confusing" (SKAT Mem. at 4). As for the purported "risk" that the jury will not know how much weight to assign the IRS's conclusion (*id.* at 4-5), SKAT can of course ask the Court to instruct the jury on that precise question. In a similar context, a judge in this District permitted "the jury [to] . . . decide, based on all the evidence presented, whether to accept the findings and whether to conclude that Defendants violated the law." *Accely v. Consol. Edison Co. of New York, Inc.*, No. 19 CIV. 5984 (DC), 2023 WL 3045795, at *3 (S.D.N.Y. Apr. 20, 2023) (rejecting argument under Fed. R. Evid. 403 seeking to preclude introduction of report from internal investigation).

Indeed, factual findings of governmental investigations are presumptively admissible under Rule 803(8) "based upon the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such records are subject will disclose inaccuracies." 31 Michael H. Graham, Federal Practice and Procedure § 6759, at 663-64 (Interim ed. 1992). That rule encompasses "not merely ... factual determinations in the narrow sense, but also ... conclusions or opinions that are based upon a factual investigation." *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991) (finding admissible certain portions of an investigation report from the District Attorney's office and Police Department). *See also In re MetLife Demutualization Litig.*, 262 F.R.D. 217 (E.D.N.Y. 2009) (rejecting Fed. R. Evid. 403 argument to exclude the opinion and decision of Superintendent of Insurance of the State of New York approving MetLife's 2000 demutualization of MetLife from evidence in a policyholder class action lawsuit regarding the demutualization). That the RJM Plan was entitled to file as a tax-exempt entity is just such a conclusion.

As in its other motions in limine, SKAT insists that the consideration of evidence Defendants wish to present would require SKAT to respond, thus purportedly leading to confusion

and wasting precious time. SKAT Mem. at 6-7. To be sure, the trial will conclude more swiftly if the Defendants are barred from presenting any evidence that undermines SKAT's claims. But evidence is not "confusing" or "wasteful" merely because it favors the Defendants and requires response.

Had the IRS examination of the RJM Plan in 2020 determined that the Plan was *not* tax qualified, the Court can be sure that SKAT would be trumpeting that determination as conclusive proof of falsity. It simply cannot be the case that because the IRS reached precisely the opposite conclusion, the IRS's finding is irrelevant or unfairly prejudicial and the Defendants cannot introduce it. Because SKAT has failed to show that evidence of the IRS's examination of the RJM Plan is unfairly prejudicial, its motion should be denied.

## II. CONCLUSION

For the foregoing reasons, SKAT's motion should be denied, and Defendants ought to be permitted to introduce evidence and argument related to the IRS's audit of the RJM Capital Pension Plan.

Dated: New York, New York
September 3, 2024

Respectfully submitted,

/s/ *Peter G. Neiman*
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com

- 10 -

Alan.Schoenfeld@wilmerhale.com

Andrew S. Dulberg
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

*Attorneys for Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, RJM Capital Pension Plan Trust, Routt Capital Pension Plan, Routt Capital Trust*


/s/ *Sharon L. McCarthy*
Sharon L. McCarthy
KOSTELANETZ LLP
7 World Trade Center
250 Greenwich Street
34th Floor
New York, NY 10007
(212) 808-8100
smccarthy@kostelanetz.com

Daniel C. Davidson
KOSTELANETZ LLP
601 New Jersey Avenue, NW
Suite 260
Washington, DC 20001
(202) 875-8000
ddavidson@kostelanetz.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pensión Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management*

*LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

/s/ *David L. Goldberg*
David L. Goldberg
Michael M. Rosensaft
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020
(212) 940-8800
david.goldberg@katten.com
michael.rosensaft@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*

/s/ *Thomas E.L. Dewey*
Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue
37th Floor
New York, New York 10017
(212) 943-9000
tdewey@dpklaw.com
smullen@dpklaw.com

/s/ *Elliot R. Peters*
Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
(415) 962-7188
epeters@keker.com
jallen@keker.com

*Attorneys for Defendant Michael Ben-Jacob*

- 13 -

- 14 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024 the foregoing document was served electronically to all parties of record by the CM/ECF system.

                                                        */s/ Peter G. Neiman*
                                                        Peter G. Neiman

September 3, 2024