# Exhibit 18

| | |
|---|---|
| **From:** | Ben-Jacob, Michael |
| **Sent:** | Wednesday, April 18, 2012 9:19 AM |
| **To:** | Richard Markowitz |
| **Cc:** | Matthew Stein; Jérôme LHOTE; Adam Larosa; Wells, Peter; Tuchman, Louis; John H. van Merkensteijn, III |
| **Subject:** | RE: Comments on Solo Documents |

Rich,

I agree that 5.1 is the most substantive point and that a side agreement clarifying the matter should address the question.

As to the mechanics of Ezra meeting monthly invoices: I am basically neutral as to which approach to take, but am leaning towards making payments from an Ezra account as I think it will make the swap mechanics a little easier as there will be a single funding of the swap amount and in a set amount as opposed to multiple fundings in presently unknown amounts.  If we went the single funding/account route we would open an escrow account here for Ezra so that the funds would be under my direct control and easily accessible.  Let me know what you think.

I am fine with postponing our call.  I will use that time slot to review the documents you just circulated.

Best,

mbj

\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Richard Markowitz [mailto:rmarkowitz@argremgt.com]
**Sent:** Wednesday, April 18, 2012 9:00 AM
**To:** Ben-Jacob, Michael
**Cc:** Matthew Stein; Jérôme LHOTE; Adam Larosa; Wells, Peter; Tuchman, Louis; John H. van Merkensteijn, III
**Subject:** Re: Comments on Solo Documents

Michael:

1

WH_MDL_00282562

I spoke with Solo about a few of the points you raised, with, perhaps, the most important being section 5.1 of the custody agreement.  They do not intend for reclaims for w/h tax to be treated as TTC.  They intend to have these funds be put into segregated accounts, when received.  They will prepare a separate letter agreement that specifies this.

On a related point, the whole working of TTC and having accounts "pooled" is critical to being able to have long and short client positions net out for regulatory and capital purposes, so this should remain.  So I think we are ok, since we may never have any large amount of money in our custody account.  (See below).

On initial funding of expenses, based on our discussion with them, we probably won't fund this up front.  Solo expects to be invoiced by the brokers and the exchanges monthly and will then bill out to the customers.  Payments can go directly to the service providers.  Each of the Partnerships will have bank accounts which can be funded and used to pay; Ezra can just direct the swap counter party to send any fixed payments to these parties on its behalf or use its own bank account (with swap money).

I didn't go over the other points, but we can review with them later.

Given this feedback, I'm not sure we need a call (and I would rather wait until we see the separate agreement on reclaims).


Richard Markowitz
Argre Management LLC
On Apr 17, 2012, at 8:33 PM, "Ben-Jacob, Michael" <Michael.Ben-Jacob@kayescholer.com> wrote:

> Rich,
>
> Here are my comments/thoughts on the Solo documents.
>
> Notice of Classification Letter:
>
> The letter references an "Order Execution Policy" which I don't believe we have seen.  We should request a copy.
>
> Client Custody Agreement:
>
> Section 3.1 – references "lending services" which presumably refers to the advances and margin arrangements contemplated by Section 4.  But I understood that they are also provided custodial services (i.e., holding assets, coordinating with the executing broker to effect trades, etc.).  Should this be added?
>
> Sections 3.2 and 3.3 – under what circumstances would a "sub-custodian" be appointed (see also Section 6.1), what would be its role, and does this mean, in effect, that a separate account would be opened?  In terms of the obligation to monitor a sub-custodian with "reasonable skill" is this a FSA term of art?  I would expect the monitoring obligation to be in accordance with industry standards and prudence, etc.
>
> Section 4.2 – How does this provision apply to the initial funding of several hundred thousand dollars in the account to cover expenses?  It appears that such funds would be immediately used to cover the first margin obligation, no?  In addition, there does not appear to be any requirement for Solo to provide an accounting of the set-offs.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00282563

Section 5.1 – It appears that, for example, the tax refunds would fall within the definition of "TTC" and will be subject to the claims of Solo's general creditors. Is this a special purpose entity? If so, perhaps this is less of a concern. But if Solo is using this entity to service multiple clients this may be a concern. Also, the fact that TTC funds are security for any future liability of the Ezra or the Partnership to Solo (see Section 4.3) leads me to wonder that if TTC includes the tax refunds how can those funds be released to Ezra or the Partnership if there is a potential that the Belgian tax authority will seek disgorgement from Solo and/or the Partnership/Ezra. See also section 6.6.

Section 6.2 – are we comfortable with pooling investments with other clients (are there any?) and the idea that shortfalls may be shared pro-rata?

Section 6.5 – is it anticipated that a sub-custodian will act as nominee for any assets in the accounts and with the idea that any assets registered in the name of the sub-custodian would be subject to the creditors of the sub-custodian?

Section 12 – presumably a copy of the fee agreement will be coming. Are the deal fees due to Solo subject to the set-off rules of Section 4 which would give them, in effect, a first payment right.

Give Up Agreement:

Section 1 – I note that it appears that any disputes would need to be heard in Belgium which may foreclose, as a practical matter, the ability to bring a claim against the executing broker.

Addendum – I would have invoices address c/o Argre Mgt, with a copy to me.

Guarantee Deed:

3.3 – Since this Guarantee would be a substantial benefit to the Partnerships and Ezra should something go wrong we should, as discussed on our call, make sure that the procedures are followed to ensure that each transaction is an "Approved Transaction."

Beneficial Owner Declaration Form:

Ultimately I think we are ok with document, but I think that it is a close thing. These representations are the same as those set out in the documents we received earlier from BNP. There BNP noted that the forms are issued in French and that the original French governs, not the English translation. Was this also issued in French initially? I ask because in the BNP documents the same phrase is translated two different ways: one says "I am the owner or beneficial owner . . ." and the other says "I am the owner . . ." . The form now submitted uses the former phrasing, which I am much happier with. Similarly, the BNP forms translated the French in the third representation as "exempt from all income tax in its country of residence" and "exempt from income tax in its country of residence." Here, the form uses the word "all". Naturally, I prefer not to include that word as charities and an IRA are subject to income tax in certain instances (such as UBTI). But I am less concerned about this point because I think the representation must be read to mean "exempt from all income tax under the general rules." Otherwise there would be no US entity that would qualify. This is all my long winded way of asking—is this document a translation or can we take the English at face value in which case, as I mentioned, I am ok with this document.

Let me know if you would like to discuss any of the points above.

Regards.

3

mbj

\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
<image001.png>
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

                                                    \*    \*    \*    \*

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax
advice
contained in this correspondence (including any attachments) is
not
intended or written to be used, and cannot be used for the
purpose of (i)
avoiding penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to
another
party any transaction or matter addressed herein.

4

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                                              WH_MDL_00282565